UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PATRICIA HANNAH,
as plenary legal guardian of
Darryl Vaughn Hanna, Jr.,
an individual,

    Plaintiff,

v.                                                          Case No. 8:19-cv-596-T-60SPF

ARMOR CORRECTIONAL
HEALTH SERVICES, INC., et al.,

    Defendants.
_____/

## ORDER

Plaintiff served a notice for a Rule 30(b)(6) deposition by subpoena to each of three nonparty Sheriffs.[1] The notices included between 22 to 24 areas of designations.[2] This cause is now before the Court upon Sheriff Gualtieri's Motion to Quash Nonparty Subpoena to Testify at a Deposition and for a Protective Order (Doc. 201), Sheriff Chronister's Motion to Quash Nonparty Subpoena to Testify at a Deposition and for a Protective Order (Doc. 205), and nonparty Sheriff Staly's Motion for Protective Order and Motion to Quash Subpoena Duces Tecum[3] (Doc. 220).[4] The Court has considered the Sheriffs' motions and the

---

[1] Bob Gualtieri, in his official capacity as Sheriff of Pinellas County, Florida (Doc. 201-2); Chad Chronister, in his official capacity as Sheriff of Hillsborough County, Florida (Doc. 205-2); and Rick Staly, in his official capacity as Sheriff of Flagler County, Florida (Doc. 220-1).
[2] Plaintiff has subsequently withdrawn some of the areas of designations.
[3] The Court notes that the subpoena to testify at a deposition served on Sheriff Staly does not seek production of documents or electronically stored information and, therefore, is not a subpoena duces tecum. *See* Doc. 220-1.
[4] Sheriff Gualtieri, Sheriff Chronister, and Sheriff Staly will be collectively referred to as "the Sheriffs."

responses, replies, and other filings related thereto (Docs. 208, 209, 212, 213, 227, 232), and, upon consideration, the motions are granted.

## BACKGROUND

Plaintiff, as Darryl Vaughn Hanna, Jr.'s legal guardian, brought this action against Manatee County, Rick Wells, in his official capacity as Sheriff of the Manatee County Sheriff's Office ("MCSO"), Armor Correctional Health Services, Inc., and several of Armor's nurses and doctors, alleging deliberate indifference to a detainee's serious medical needs and Sheriff Wells' negligent hiring, retention, and supervision of Armor, arising out of the alleged delayed medical treatment of Hanna, Jr., who suffered multiple syncopal episodes from August 2017 through August 2018, after which he did not regain consciousness and currently remains in a persistent vegetative state. (*See, generally,* Doc. 40). The initial contract between MCSO and Armor, a private health care provider, became effective on October 1, 2012 and remained in effect until September 30, 2015. (Doc. 40 at ¶¶ 34, 37). Thereafter, MCSO and Armor allegedly executed seven amendments for additional one-year terms with the last amendment being extended through December 31, 2018. (Doc. 40 at ¶ 73).

In her 23-count Amended Complaint, Plaintiff alleges a state law cause of action against Sheriff Wells for "Negligent Hiring, Retention, and Supervision of Armor" in Count V. More specifically, Plaintiff alleges that Sheriff Wells knew or should have known about Armor's history of claims, adverse litigation, medical negligence, deliberate indifference, and fraud throughout the State of Florida and the country. (Doc. 40 at ¶ 320). Plaintiff alleges that MCSO breached its duty to exercise reasonable care and due diligence by entering into an initial contract with Armor and renewing the contract despite the fact that other counties

had previously cancelled, voided, terminated, or refused to renew their contracts with Armor. (Doc. 40 at ¶ 321).

In Count VII, Plaintiff alleges a claim of deliberate indifference, pursuant to *Monell v. Department of Social Services of City of New York,* 436 U.S. 658 (1978), against Sheriff Wells and MCSO contending "a policy or custom to not reasonably scrutinize and evaluate ARMOR's performance the contract [sic] and to not ensure ARMOR was compliant." (Doc. 40 at ¶ 365). Plaintiff also alleges a *Monell* claim in Count XI against Manatee County contending that Manatee County had a "policy or custom to not reasonably scrutinize and evaluate prospective contractors such as Armor prior to engaging them for services." (Doc. 40 at ¶ 462).

## STANDARD OF REVIEW

Pursuant to Rule 30(b)(6), upon receiving a deposition notice that describes "with reasonable particularity the matters for examination," a corporation must make a good faith effort to designate a representative having knowledge of the matters listed in the notice and to prepare the representative so he or she can answer fully, completely, and not evasively. Fed. R. Civ. P. 30(b)(6); *Marcelle v. Am. Nat'l Delivery, Inc.*, No. 3:09-cv-82-J-34MCR, 2009 WL 4349985, at *2 (M.D. Fla. Nov. 24, 2009). "The rules require that the corporation select an officer or employee to gather and obtain from books, records, other officers or employees, or other sources, the information necessary to answer the [discovery]." *Palma v. Metro PCS Wireless, Inc.*, No. 8:13-cv-698-T-33MAP, 2014 WL 1900102, at *1 (M.D. Fla. Apr. 30, 2014) (citation and quotation marks omitted).

But Rule 30(b)(6) itself does not limit what can be asked at a deposition. "The Rule is not one of limitation but rather of specification within the broad parameters of the discovery

3

rules." *King v. Pratt & Whitney,* 161 F.R.D. 475, 476 (S.D. Fla. 1995). The scope of discovery is defined instead by Rule 26(b)(1) as "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Rule 26(b)(2)(C) requires the Court to limit discovery that (i) "is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; … or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

To protect a party from whom discovery is sought from "annoyance, embarrassment, oppression, or undue burden or expense," a court may issue a protective order for good cause. Fed. R. Civ. P. 26(c)(1). "The party requesting a protective order must make a specific demonstration of facts in support of the request, rather than conclusory or speculative statements about the need for a protective order and the harm which will be suffered without one." *New World Network, Ltd. v. M/V. Norwegian Sea*, No. 05-22916-CIV, 2007 WL 1068124, at *1 (S.D. Fla. Apr. 6, 2007). In determining whether the moving party has established good cause for a protective order, the court balances the interests of the parties. *Id.* Good cause represents the "sole criterion" for assessing the propriety of a protective order, and "it generally signifies a sound basis or legitimate need to take judicial action." *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 356 (11th Cir. 1987).

Federal Rule of Civil Procedure 45 governs the issuance of subpoenas in federal civil actions. In pertinent part, a party may issue subpoenas to nonparties to attend a deposition. Fed. R. Civ. P. 45(a)(1)(B). The breadth and limits of discovery set forth in Rule 26 are applicable to nonparty discovery under Rule 45. *See, e.g.,* Advisory Committee Note to the 1970 Amendments to Rule 45 (noting that the 1970 amendments "make it clear that the scope

4

of discovery through a subpoena is the same as that applicable to Rule 34 and other discovery rules"). So, "[w]hile Rule 45 does not specifically identify irrelevance as a reason to quash a subpoena, it is generally accepted that the scope of discovery allowed under Rule 45 is limited by the relevancy requirement of the federal discovery rules." *Jordan v. Comm'r, Miss. Dep't of Corrections*, 947 F.3d 1322, 1329 (11th Cir. 2020) (noting that federal courts in this circuit have uniformly applied this principle). As such, "a subpoena issued under Rule 45 should be quashed to the extent it seeks irrelevant information." *Id.*

Correspondingly, Rule 45(d)(3)(A)(iv) requires the court to quash or modify a subpoena that "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv); *see also ML Healthcare Servs., LLC v. Publix Super Mkts., Inc.*, 881 F.3d 1293, 1306 (11th Cir. 2018). Several factors have been identified as pertinent to whether a subpoena would impose an undue burden, including the admissibility or relevance of the information requested and the burden imposed by producing it. *Jordan*, 947 F.3d at 1337 (quoting *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004)); *ML Healthcare*, 881 F.3d at 1306-07 (admissibility and relevance of evidence pertinent to undue burden analysis). "The status of the subpoena recipient as a non-party is also a factor that can weigh against disclosure in the undue burden inquiry." *Jordan*, 947 F.3d at 1337 (citing *Wiwa*, 392 F.3d at 818 ("[I]f the person to whom the document request is made is a non-party, the court may also consider the expense and inconvenience to the non-party.")). Here, the Sheriffs have met the standards under Rule 26(c)(1) and Rule 45(d)(3)(A)(iv); thus, establishing entitlement to both a protective order and an order quashing the subpoenas.

## DISCUSSION

The areas of designations included in the notices can be summarized as follows: all statutory and constitutional duties the Sheriff owed to detainees within its custody during the years 2012-2018 (the time period Armor held the contract with Sheriff Wells) as it relates to the provision of adequate health care; when and how long the Sheriff contracted with Armor;[5] whether the Sheriff believed its duties to detainees were extinguished when it contracted with Armor; interpretation of the Sheriff's contract with Armor; the Sheriff's due diligence on Armor prior to executing its contract with Armor; the Sheriff's due diligence after executing its contract with Armor; when and why the Sheriff terminated Armor's contract; the meaning of statements to the media regarding Armor; each time MCSO contacted the Sheriff's office to discuss Armor's performance; each time MCSO contacted the Sheriff's office to discuss this lawsuit; and whose responsibility is the provision of health care services to detainees if the Sheriff does not contract a third party to provide those services. The Sheriffs argue[6] that the areas of designation are not relevant to Plaintiff's claims, call for legal conclusions about statutory and constitutional duties of the Sheriffs and/or contracts between the Sheriffs and Armor, are cumulative to information previously provided or offered in response to

---

[5] The Sheriffs all contracted with Armor in their respective counties and for various dates.

[6] Although each Sheriff's motion sets forth somewhat differing arguments or objections, some have adopted the arguments of the others, and, ultimately, whether the subpoenas should be quashed and/or a protective order entered is a singular decision applicable to all the Sheriffs. The Court further notes that any arguments made by the parties but not specifically addressed herein have been considered by the Court, do not change the Court's analysis, and need not be specifically addressed. For example, Sheriff Chronister's Apex Doctrine argument (*see* Doc. 205 at 3-4) is not addressed because it is inapplicable to a Rule 30(b)(6) deposition for which the Sheriff can designate whomever it chooses. *See QBE Ins. Corp. v. Jorda Enters., Inc.*, 277 F.R.D. 676, 688 (S.D. Fla. 2012). Similarly, suggestions for additional rulings not sought in the motions at issue, but instead made by parties in "responses," are not properly before the Court and have not been considered.

subpoenas to produce documents,[7] are unduly burdensome, or inappropriately seek mental impressions.

Statutory and Constitutional Duties

The first seven areas of designation call for each of the Sheriffs to identify and describe all statutory and constitutional duties each Sheriff believes it owed to detainees within its custody during the years 2012-2018 (the time period Armor held the contract with Sheriff Wells). Another area of designation seeks testimony regarding whether the Sheriff believed, when it was under contract with Armor, that its statutory and constitutional duties owed to detainees within its custody to provide adequate health care were extinguished or otherwise no longer applied.

Plaintiff explains that she seeks the Sheriffs' "subjective opinions and beliefs as to what statutory and constitutional duties" they had during the years when MCSO and Armor had a contract to provide health care to inmates. (Doc. 232 at 7). Plaintiff argues that "[a]lthough it may ultimately be up to this Court to identify the precise duties of Sheriff Wells in this litigation … [g]etting [the Sheriffs'] position on that same issue during the same time period in the same state doing the same things with the same contracted vendor is relevant from a discovery standpoint." (Doc. 208 at 5-6). Plaintiff argues that the relevancy of these areas of designation is to show: "what was *reasonable* for a similarly situated Sheriff based on the duties owed statutorily and constitutionally" (Doc. 208 at 5) and "what [a Sheriff] perceived its own

---

[7] The Pinellas County Sheriff's Office ("PCSO") was served with a Subpoena to Produce Documents by Plaintiff on or about November 21, 2019. In response, documents were supplied to Plaintiff's counsel by the PCSO on or about January 9, 2020 (Doc. 201 at ¶¶ 4-5). The Hillsborough County Sheriff's Office ("HCSO") was served with a Subpoena to Produce Documents by Plaintiff on or about November 21, 2019. Plaintiff, however, has not inspected the documents gathered by the HCSO or otherwise followed through on the subpoena. (Doc. 205 at ¶¶ 4-6).

7

statutory and constitutional obligations to be as a Florida Sheriff during the relevant periods of time to provide similar services [of health care] to detainees in jail in its own jurisdiction" (Doc. 232 at 7).

In arguing the irrelevancy of this discovery, Sheriff Gualtieri aptly described Plaintiff's discovery efforts as "attempting to utilize PCSO and other Sheriff's Offices … as de facto experts against Sheriff Wells and the Manatee County Sheriff's Office." (Doc. 227 at 3). Indeed, Plaintiff states that, in anticipation of Sheriff Wells arguing at summary judgment or at trial that once he contracted with Armor whatever duties he had were alleviated, Plaintiff seeks to get the Sheriffs' "position" on that same issue. (Doc. 208 at 6). The Sheriffs' positions and opinion testimony on these statutory and constitutional duties as comparators for what Sheriff Wells should or should not have been doing in relation to Armor and the health care provided to detainees, however, is irrelevant and disproportional to the needs of the case.

Moreover, it worth noting that Rule 30(b)(6) depositions are designed to discover facts only, not legal theories or contentions. *Arthrex, Inc. v. Parcus Med., LLC*, No. 2:11-cv-694-FtM-29UAM, 2013 WL 12155461, at *1 (M.D. Fla. Nov. 18, 2013) (citing *U.S. ex rel. Baklid-Kunz v. Halifax Hosp. Med. Ctr.*, No. 6:09-cv-1002-Orl-31TBS, 2012 WL 3537070, at *4 (M.D. Fla. Aug. 14, 2012)). These areas of designation call for such legal conclusions that ultimately would be inadmissible. *See Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) ("A witness…may not testify to the legal implications of conduct; the court must be the jury's only source of law."); *Ojeda v. Louisville Ladder Inc.*, 410 F. App'x 213 (11th Cir. 2010) (excluding statements in affidavit as legal conclusions and improper lay witness testimony) (cited as persuasive authority); *Bachmann v. Hartford Fire Ins. Co.*, 323 F. Supp. 3d 1356, 1360 (M.D. Fla. 2018) (citing *Montgomery*, 898 F.2d at 1541); *see also Birnholz v. 44 Wall*

8

*St. Fund, Inc.*, 880 F.2d 335, 341 n.8 (11th Cir. 1989) ("the interpretation of a statute is a question of law for the court to decide");[8] *Owens v. City of Ft. Lauderdale*, 174 F. Supp. 2d 1298, 1311 (S.D. Fla. 2001). While Rule 26(b)(1) expressly provides that evidence need not be admissible to be discoverable, admissibility is a factor for the Court's consideration as to whether a subpoena imposes an undue burden. *See* Fed. R. Civ. P. 26(b)(1); *ML Healthcare*, 881 F.3d at 1306-07. Because the Sheriffs' opinion testimony as to statutory and constitutional duties would constitute inadmissible legal conclusions, the Court finds it unduly burdensome on these nonparties and disproportional to the needs of the case.

### When and For How Long Did the Sheriff Contract Armor

Plaintiff seeks testimony from the Sheriffs regarding when and for how long the Sheriffs contracted with Armor to provide health care to detainees within its custody. Similar to that discussed above, when and for how long the Sheriffs contracted with Armor is irrelevant to Plaintiff's claims and disproportional to the needs of the case. The Court also notes that information regarding their contracts with Armor was provided or offered to Plaintiff by the PCSO and the HCSO, respectively, by way of their document production. *See supra* at n. 7.

### Describing the Parties, Terms, and Obligations of the Contract with Armor

Relatedly, Plaintiff seeks a description of the parties and the terms and obligations of the parties to the contracts between the Sheriffs and Armor. The Court finds that this area of designation calls for legal conclusions in addition to being irrelevant to Plaintiff's claims. As such, it is unduly burdensome and disproportional to the needs of the case.

---

[8] Plaintiff concedes that it is a matter of law for the Court to decide which statutory and constitutional duties apply to Defendants in this case. (Doc. 232 at 7).

<u>The Sheriff's Investigation or Due Diligence on Armor Prior to Executing Contract
and The Sheriff's Investigation or Due Diligence on Armor After Executing Contract</u>

Plaintiff seeks a description of any investigation or due diligence performed by the Sheriff both prior to and after executing a contract with Armor to vet or otherwise ascertain the fitness of Armor to provide adequate health care to detainees within its custody. Plaintiff contends that "Sheriff Wells could and should have contacted his fellow agencies to see their experience with Armor" (Doc. 208 at 5) and "if a similarly situated Sheriff such as PCSO performed *any* degree of pre-contract vetting of Armor then it is relevant … as to what a reasonable entity would do in that situation" (Doc. 208 at 7). As discussed above, this type of comparator evidence is irrelevant and disproportional to the needs of the case. Moreover, the only relevant evidence as to the alleged negligent retention of Armor is the adequacy of medical care being provided at the Manatee County Jail by Armor between its initial contract in 2012 and Hanna, Jr.'s alleged injuries in 2017 through 2018.

Similarly, the testimony of the Sheriffs would have no relevance as to whether Sheriff Wells had a "policy or custom to not reasonably scrutinize and evaluate prospective contractors such as Armor prior to engaging them for services" (Doc. 40 at ¶ 462) or a "policy or custom to not reasonably scrutinize and evaluate Armor's performance under the Original Agreement and its seven Amendments" (Doc. 40 at ¶ 463). This liability requires a causal connection of a history of widespread abuse that would have put the MCSO on notice of the existence of a deprivation in the Manatee County Jail, which was not corrected and led to the alleged events. *See, e.g., Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990) (widespread abuse sufficient to put county on notice must have been obvious, flagrant, rampant, and of a continued duration in their own jail); *Andrews v. Marshall*, No. 2:16-cv-814-SPC-MRM, Doc. 148 at 23 (M.D. Fla. May 8, 2019) (unpublished) (reports of health care provider's struggles

in other jails found unavailing as support for deliberate indifference policy claim because none of the inadequate health care reported occurred in the county jail at issue).

### When and Why the Sheriff Terminated Its Contract with Armor

The reasons enumerated above are equally applicable to the area of designation seeking a description of when and why the Sheriffs terminated their contracts with Armor. The information is irrelevant and disproportional to the needs of the case.

### The Meaning of Comments Made by the Sheriff to the Media

Plaintiff argues that the meaning behind statements made by the Sheriffs to the media regarding Armor is relevant because when and why the PCSO terminated Armor is probative of what Sheriff Wells knew or should have known and his alleged failure to terminate Armor in Manatee County. However, as discussed above, when and why PCSO terminated Armor is irrelevant, and, therefore, testimony from the Sheriffs regarding the meaning of statements made to the media regarding Armor are likewise irrelevant and disproportional to the needs of the case. The fact that statements were made to the media about Armor's performance may be relevant to Plaintiff's claims as to what Sheriff Wells knew or should have known, but the Sheriffs' testimony to expound or explain the meaning of those statements is not. Moreover, to the extent these areas of designation seek the Sheriffs' personal mental impressions, they are inappropriate for a Rule 30(b)(6) deposition as only "the corporation's position, beliefs and opinions" as well as facts within the collective knowledge of the corporation are allowed. *Faynik v. Magical Cruise Co., Ltd.*, No. 6:17-cv-1282-Orl-37TBS, 2018 WL 7360662, at *1 (M.D. Fla. Aug. 16, 2018) (citing *QBE*, 277 F.R.D. at 688).

<u>Each Time MCSO Contacted the Sheriff's Office to Discuss Armor's Performance or This Lawsuit</u>

The Sheriffs object to these two areas of designation as irrelevant, vague and overbroad in scope and time due to lack of time constraints, and unduly burdensome and oppressive. Plaintiff argues that each time MCSO contacted the Sheriffs' offices to discuss Armor's performance, presumably from 2012 to 2018, is relevant because Plaintiff alleges in her Amended Complaint that Sheriff Wells' office should have contacted the other Sheriffs' offices or failed to do so. Plaintiff further contends that each time MCSO contacted the Sheriffs' offices to discuss this lawsuit is relevant because, among other reasons, Sheriff Wells' office is a party to this lawsuit and any statements made by a defendant about this lawsuit are relevant and discoverable.

Despite having conducted lengthy discovery, including the deposition of Sheriff Wells, it does not appear that Plaintiff has any reason to believe that MCSO contacted the other Sheriffs regarding Armor's performance or this lawsuit.[9] As such, Plaintiff seeks to conduct an impermissible fishing expedition to the detriment of the Sheriffs. *See Porter v. Ray*, 461 F.3d 1315, 1324 (11th Cir. 2006) (although broad, "the discovery rules do not permit the [parties] to go on a fishing expedition). Moreover, these areas of designation are not stated with reasonable particularity in that Plaintiff fails to specify a time range. *See* Fed. R. Civ. P. 30(b)(6) (deposition notice "must describe with reasonable particularity the matters for examination"); *QBE*, 277 F.R.D. at 688 ("The party seeking discovery must describe matters with reasonable particularity…."). Accordingly, the Court finds these areas of designation unduly burdensome and disproportional to the needs of the case.

---

[9] Sheriff Staly specifically represents that the likelihood that there are any conversations that are responsive is low. (Doc. 220 at 5).

12

<u>Whose Responsibility is the Provision of Health Care Services to Detainees If the Sheriff Does Not Contract a Third Party to Provide Those Services</u>

Finally, Plaintiff seeks an opinion from the Sheriffs as follows: "If the Sheriff does not contract a third party to provide health care services to detainees and inmates within its custody in any correctional facility, whose responsibility would that be?" (*See, e.g.,* Doc. 220-1 at ¶ 24). The Sheriffs' opinion on this issue, as discussed above, is irrelevant to Plaintiff's claims and disproportional to the needs of this case.

## CONCLUSION

Requiring the Sheriffs or an agency representative to sit for a Rule 30(b)(6) deposition would be disproportionate to the needs of the case and unduly burdensome because what happened or did not happen in those counties does not have any bearing on or relevance to the alleged events in Manatee County and Plaintiff's allegations or claims in this action. As such, and for the reasons discussed herein, the Court finds that the Sheriffs have established good cause for the issuance of a protective order and undue burden for quashing the subpoenas.

Accordingly, it is hereby **ORDERED**:

(1) Sheriff Bob Gualtieri's Motion to Quash Nonparty Subpoena to Testify at a Deposition and for a Protective Order (Doc. 201), Sheriff Chad Chronister's Motion to Quash Nonparty Subpoena to Testify at a Deposition and for a Protective Order (Doc. 205), and nonparty Sheriff Rick Staly's Motion for Protective Order and Motion to Quash Subpoena Duces Tecum (Doc. 220) are **GRANTED**.

(2) The Sheriffs are protected from being deposed on their respective deposition dates, or any other date, in this matter in accordance with Federal Rule of Civil Procedure 26(c)(1).

(3) The subject subpoenas to testify at a deposition served upon the Sheriffs are quashed pursuant to Federal Rule of Civil Procedure 45(d)(3).

**ORDERED** in Tampa, Florida, this 22nd day of June 2020.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE