UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PATRICIA HANNAH,

    Plaintiff,

v.                                               Case No. 8:19-cv-596-T-60SPF

ARMOR CORRECTIONAL HEALTH
SERVICES, INC., et al.,

    Defendants.
_____/

**ORDER DENYING "DEFENDANT LAUGHLIN'S MOTION FOR FINAL SUMMARY JUDGMENT (AND MEMORANDUM OF LAW)"**

This matter is before the Court on "Defendant Laughlin's Motion for Final Summary Judgment (and Memorandum of Law)" and supporting exhibits, filed on July 3, 2020. (Docs. 258; 259). On August 7, 2020, Plaintiff Patricia Hannah filed her response in opposition. (Doc. 329). Upon review of the motion, response, court file, and record, the Court finds as follows:

**Background**[1]

Plaintiff Patricia Hannah is the plenary guardian for Darryl Vaughn Hanna, Jr., who is in a persistent vegetative state after suffering four syncopal episodes while he was a pretrial detainee at the Manatee County Jail. The crux of the amended complaint is that Defendants, including Defendant Ronald Laughlin, were medically negligent and deliberately indifferent to Hanna, Jr.'s medical needs.

---

[1] The Court construes the facts and evidence in light most favorable to Plaintiff for the purpose of ruling on the motion for summary judgment.

During intake, Hanna, Jr. indicated that he did not have any mental, physical, or developmental disabilities or limitations that the jail needed to be aware of during his incarceration.  His appearance was noted as unremarkable, he had no visible signs of injuries, and he appeared alert and oriented.  Hanna, Jr. indicated that he was not currently ill or injured, had not experienced a head injury in the last 72 hours, and had not been to a hospital in the last three months.  He indicated that he had active asthma and used his inhaler in 2016.

On August 23, 2017, Deputy Thomas McGuire received a phone call informing him that Hanna, Jr. had passed out in the exercise yard.  McGuire went out and asked Hanna, Jr. what had happened.  Hanna, Jr. said that he was playing basketball, blacked out, and that his head hurt.  Hanna, Jr. appeared disoriented.  Medical staff were called and Defendant Leila Polanco, a nurse, responded.  She was told by other jail residents that Hanna, Jr. had a seizure, it was too hot outside, and another resident may have hit Hanna, Jr. on the head.  Polanco concluded that the warm temperature outside caused Hanna, Jr. to faint and that he may have hit his head when he fell and sustained a concussion. On the assessment form, she selected the box associated with "Unintentional (e.g. sports, fall, etc.)" rather than the "Acute Medical Condition (e.g. loss of consciousness, seizure, etc.)" box.

Polanco requested to view video surveillance of the incident.  Deputy McGuire notified Defendant Sergeant Ronald Laughlin and informed him of the incident, Polanco's observations and evaluations, and her desire to view video. Laughlin permitted Polanco to view the video recording and watched it with her.

There was no audio. The video showed Hanna, Jr. and other residents playing basketball outside in the courtyard when, all of a sudden, Hanna, Jr. collapsed and his head hit the ground. Laughlin's notes indicate that Hanna, Jr. remained on the ground for around 41 seconds.

Polanco and Laughlin did not request, contact, initiate, or recommend emergency medical services or fire rescue to respond to the jail to evaluate Hanna, Jr. They also did not request that Hanna, Jr. be evaluated by a licensed physician or medical doctor. They never requested or recommended that Hanna, Jr. be transported to an outside medical facility, such as a hospital or emergency room. Instead of being seen by a physician, physician's assistant or medical doctor, Hanna, Jr. was ordered to return to housing, where he resided in a cell alone.

On September 8, 2017, Hanna, Jr. fainted in his cell. Again, although nurses responded to evaluate him, Hanna, Jr. was never seen or evaluated by a doctor, physician, or physician's assistant. The next day, a deputy found Hanna, Jr. lying face up on the floor underneath the toilet. The deputy entered the cell to check on him – although Hanna, Jr. was breathing, he was unresponsive to verbal or tactile stimulation. Deputies attempted to perform CPR on Hanna, Jr. Then, emergency medical services arrived and transported him to a nearby hospital. Hanna, Jr. has not regained consciousness and remains in a persistent vegetative state.

## Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A properly supported motion for summary judgment is not defeated by the existence of a factual dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Only the existence of a genuine issue of material fact will preclude summary judgment. *Id.*

The moving party bears the initial burden of showing that there are no genuine issues of material fact. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing the existence of genuine issues of material fact. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995). If there is a conflict between the parties' allegations or evidence, the nonmoving party's evidence is presumed to be true and all reasonable inferences must be drawn in the nonmoving party's favor. *Shotz v. City of Plantation*, 344 F.3d 1161, 1164 (11th Cir. 2003).

## Analysis

In this case, Plaintiff alleges a deliberate medical indifference claim against Laughlin. In his motion, Laughlin argues that the undisputed facts show that his acts or omissions did not rise to the level of deliberate indifference, and that Plaintiff cannot establish causation. In addition, Laughlin argues that he is entitled to qualified immunity.

Under Plaintiff's version of events, a prison official – Deputy McGuire – notified Laughlin that Hanna, Jr. had blacked out while playing basketball outside in the courtyard, and that he complained of head pain and seemed disoriented. Laughlin heard that the on-duty nurse – Leila Polanco – thought that Hanna, Jr. might have a concussion, but she did not refer him to the prison doctor. Laughlin reviewed a surveillance tape with the nurse and observed that Hanna, Jr. fell to the ground and remained there for nearly a minute. Despite this knowledge, Laughlin did not refer Hanna, Jr. to the prison doctor and allowed him to return to his cell.

Previously, Judge Moody denied Laughlin's motion to dismiss based on qualified immunity, which raised identical or substantially similar arguments. (Doc. 59). That Order was appealed to the Eleventh Circuit Court of Appeal, which affirmed Judge Moody's ruling. *Hannah v. Armor Correctional Health Services, Inc.*, 792 F. App'x 742 (11th Cir. 2019). Considering Plaintiff's version of events,[2] *which has not changed in any meaningful way*, the Eleventh Circuit concluded that

> a jury could find that Hanna, Jr.'s medical condition was so serious that he obviously needed medical attention. A jury could also find that Laughlin was subjectively aware of the risk of harm flowing from Hanna, Jr.'s condition, given that he blacked out for almost a minute, hit the ground, and had the symptoms of a concussion. And the jury could find that Laughlin disregarded this risk by more than mere negligence when he failed to refer Hanna, Jr. for further medical evaluation.

*Id.* at 745. Although this ruling was framed solely in the context of a qualified immunity argument, the Court finds that this analysis is equally applicable to

---

[2] Many of the key facts – including that Laughlin knew that Hanna, Jr. blacked out and personally viewed the video to see Hanna, Jr. fall to the ground and lie there for nearly a minute – are undisputed.

Laughlin's argument that the evidence conclusively establishes that he cannot be held liable for deliberate indifference. Additionally, the Court finds that Laughlin's argument concerning causation is conclusory and not supported by the evidence. Just because an individual "could not have known what would happen" does not mean that his or her act or omission could not or did not cause an injury. Clearly, there are factual issues for a jury to consider. Laughlin's motion for summary judgment is denied.

It is therefore

**ORDERED, ADJUDGED,** and **DECREED:**

(1)   "Defendant Laughlin's Motion for Final Summary Judgment (and Memorandum of Law)" (Doc. 258) is **DENIED**.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 23rd day of September, 2020.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**