# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

PATRICIA HANNAH,

    Plaintiff,

v.                                                   Case No. 8:19-cv-596-T-60SPF

ARMOR CORRECTIONAL
HEALTH SERVICES, INC., et al.,

    Defendants.
_____/

## ORDER DENYING "LEILA POLANCO'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW"

This matter is before the Court on "Leila Polanco's Motion for Summary Judgment and Incorporated Memorandum of Law" and supporting exhibits, filed on July 6, 2020. (Docs. 271; 284). On August 19, 2020, Plaintiff Patricia Hannah filed her response in opposition. (Doc. 365). Upon review of the motion, response, court file, and record, the Court finds as follows:

### Background[1]

Plaintiff Patricia Hannah is the plenary guardian for Darryl Vaughn Hanna, Jr., who is in a persistent vegetative state after suffering four syncopal episodes while he was a pretrial detainee at the Manatee County Jail.[2] The crux of the amended complaint is that Defendants, including Defendant Nurse Leila Polanco, were medically negligent and deliberately indifferent to Hanna, Jr.'s medical needs.

---

[1] The Court construes the facts and evidence in light most favorable to Plaintiff for the purpose of ruling on the motion for summary judgment.
[2] Hanna, Jr. was awaiting trial on murder charges related to a double homicide.

During intake, Hanna, Jr. indicated that he did not have any mental, physical, or developmental disabilities or limitations that the jail needed to be aware of during his incarceration. His appearance was noted as unremarkable, he had no visible signs of injuries, and he appeared alert and oriented. Hanna, Jr. indicated that he was not currently ill or injured, had not experienced a head injury in the last 72 hours, and had not been to a hospital in the last three months. He indicated that he had active asthma and used his inhaler in 2016.

On August 23, 2017, Deputy Thomas McGuire received a phone call informing him that Hanna, Jr. had passed out in the exercise yard. McGuire went out and asked Hanna, Jr. what had happened. Hanna, Jr. said that he was playing basketball, blacked out, and that his head hurt. Hanna, Jr. appeared disoriented. Medical staff were called and Defendant Leila Polanco, a nurse, responded. She was told by other jail residents that Hanna, Jr. had a seizure, it was too hot outside, and another resident may have hit Hanna, Jr. on the head. Polanco concluded that the warm temperature outside caused Hanna, Jr. to faint and that he may have hit his head when he fell and sustained a concussion. On the assessment form, she selected the box associated with "Unintentional (e.g. sports, fall, etc.)" rather than the "Acute Medical Condition (e.g. loss of consciousness, seizure, etc.)" box.

Polanco requested to view video surveillance of the incident. Deputy McGuire notified Defendant Sergeant Ronald Laughlin and informed him of the incident, Polanco's observations and evaluations, and her desire to view video. Laughlin permitted Polanco to view the video recording and watched it with her.

There was no audio. The video showed Hanna, Jr. and other residents playing basketball outside in the courtyard when, all of a sudden, Hanna, Jr. collapsed and his head hit the ground. Laughlin's notes indicate that Hanna, Jr. remained on the ground for around 41 seconds.

Polanco and Laughlin did not request, contact, initiate, or recommend emergency medical services or fire rescue to respond to the jail to evaluate Hanna, Jr. They also did not request that Hanna, Jr. be evaluated by a licensed physician or medical doctor. They never requested or recommended that Hanna, Jr. be transported to an outside medical facility, such as a hospital or emergency room. Instead of being seen by a physician, physician's assistant or medical doctor, Hanna, Jr. was ordered to return to housing, where he resided in a cell alone.

On September 8, 2017, Hanna, Jr. fainted in his cell. Again, although nurses responded to evaluate him, Hanna, Jr. was never seen or evaluated by a doctor, physician, or physician's assistant. The next day, a deputy found Hanna, Jr. lying face up on the floor underneath the toilet. The deputy entered the cell to check on him – although Hanna, Jr. was breathing, he was unresponsive to verbal or tactile stimulation. Deputies attempted to perform CPR on Hanna, Jr. Then, emergency medical services arrived and transported him to a nearby hospital. Hanna, Jr. has not regained consciousness and remains in a persistent vegetative state.

## Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A properly supported motion for summary judgment is not defeated by the existence of a factual dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Only the existence of a genuine issue of material fact will preclude summary judgment. *Id.*

The moving party bears the initial burden of showing that there are no genuine issues of material fact. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing the existence of genuine issues of material fact. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995). If there is a conflict between the parties' allegations or evidence, the nonmoving party's evidence is presumed to be true and all reasonable inferences must be drawn in the nonmoving party's favor. *Shotz v. City of Plantation*, 344 F.3d 1161, 1164 (11th Cir. 2003).

## Analysis

### *Count XII – Medical Indifference*

Plaintiff alleges a deliberate medical indifference claim against Polanco. In her motion, Polanco argues that the undisputed facts show that her acts or omissions did not rise to the level of deliberate indifference, and that Plaintiff cannot establish causation.

Under Plaintiff's version of events, Polanco thought that Hanna, Jr. might have a concussion. Polanco reviewed a surveillance tape and observed that Hanna, Jr. fell to the ground and remained there for nearly a minute. Despite this knowledge, Polanco did not refer Hanna, Jr. to the prison doctor or activate emergency medical services. Instead, she allowed him to return to his cell.

Based on these facts, a reasonable jury could find that Hanna, Jr.'s medical condition was so serious that he obviously required medical attention on August 23, 2017, and that Polanco was aware of the risk of harm given that Hanna, Jr. blacked out. *See Hannah v. Armor Correctional Health Services, Inc.*, 792 F. App'x 742, 745 (11th Cir. 2019) (holding that a reasonable jury could find that Hanna, Jr.'s medical condition was so serious that he obviously needed medical attention, and that deputy was subjectively aware of the risk of harm, given that Hanna, Jr. had blacked out). The jury could also find that Polanco disregarded this risk by more than mere negligence when Polanco failed to, among other things, refer Hanna, Jr. for further medical evaluation and treatment. *See id.* The motion for summary judgment is denied as to this ground.

Polanco also argues that because Plaintiff cannot establish causation, her medical indifference claim fails. The Court finds that Polanco's argument concerning causation – that this one fainting episode did not cause the brain injury in this case – is conclusory and not supported by the evidence. Plaintiff argues that Polanco's inaction played a role in Hanna, Jr.'s future episodes and current vegetative state and cites to record evidence to demonstrate causation. Clearly,

there are factual issues for a jury to consider, including whether Polanco's actions contributed to or caused Hanna, Jr.'s injuries. The motion is denied as to this ground.

### *Count XIII – Medical Negligence*

Polanco argues that she cannot be sued for negligence or medical malpractice because she is entitled to immunity under § 768.28(9), *F.S.* Specifically, Polanco contends that she was working as a nurse for the benefit of the Manatee County Jail and is immune from claims of negligence.

When determining whether an independent contractor is entitled to qualified immunity as an "officer, employee, or agent of the state" under § 768.28(9)(a), courts must look to the degree of control retained or exercised by the state entity contracting with the private company. *Bean v. University of Miami*, 215 So. 3d 810, 816 (Fla. 3d DCA 2018). Although Polanco alleges that she was working as a nurse for the benefit of Manatee County, she has failed to point to record evidence to demonstrate the degree of control over her work retained or exercised by Manatee County, such as any contracts between Armor and Manatee County. *See Obremski v. Armor Correctional Health Services, Inc.*, No. 18-61798-CIV-ALTMAN/Hunt, 2020 WL 5224329, at *10-11 (S.D. Fla. Apr. 7, 2020) (denying summary judgment after finding that Armor had not established entitlement to sovereign immunity based on contract between Sheriff's Office and Armor). Plaintiff, on the other hand, has pointed to record evidence to argue that Armor had control over Polanco's work, not Manatee County.

"Agency status is a question of fact, except in those cases where the party opposing summary judgment is unable to point to any conflicting facts or inferences to be drawn from the facts." *Id.* at *9 (quoting *M.S. v. Nova Southeastern University Inc.*, 881 So. 2d 614, 617 (Fla. 4th DCA 2004)). Based on the record before the Court, it is unclear what degree of control Manatee County or the Sheriff exercised over Armor or Polanco. Because Polanco has failed to point to record evidence to support her immunity claim, and Plaintiff has identified conflicting facts and inferences to be drawn as to Polanco's status, the motion is denied as to this ground.

### *Qualified Immunity or Good Faith Immunity*

Polanco also argues that she should be entitled to qualified immunity or "good faith" immunity. Courts have declined to extend the doctrine of qualified immunity to privately employed prison physicians. *See, e.g.*, *Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999). However, the Supreme Court has not foreclosed the possibility that an affirmative defense of "good faith" is something that could possibly be raised in certain circumstances. *See Richardson v McKnight*, 521 U.S. 399, 413-14 (1997). In this case, it does not appear that Polanco specifically raised this good faith defense until now. In her Answer, Polanco only mentions qualified immunity. (Doc. 62). Moreover, if a jury believes Plaintiff's version of events, Polanco did not act in good faith when she was subjectively aware of the risk of harm to Hanna, Jr. but disregarded that risk by more than mere negligence. The motion for summary judgment is denied as to this ground.

It is therefore

**ORDERED, ADJUDGED,** and **DECREED:**

(1)    "Leila Polanco's Motion for Summary Judgment and Incorporated Memorandum of Law" (Doc. 271) is **DENIED**.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 16th day of October, 2020.

_____
**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**