UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PATRICIA HANNAH,

    Plaintiff,

v.                                                Case No. 8:19-cv-596-T-60SPF

ARMOR CORRECTIONAL
HEALTH SERVICES, INC., et al.,

    Defendants.
_____/

## ORDER DENYING "CARMA OGLINE'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW"

This matter is before the Court on "Carma Ogline's Motion for Summary Judgment and Incorporated Memorandum of Law," filed on July 6, 2020. (Docs. 279; 283). On August 19, 2020, Plaintiff Patricia Hannah filed her response in opposition. (Doc. 365). Upon review of the motion, response, court file, and record, the Court finds as follows:

### Background[1]

Plaintiff Patricia Hannah is the plenary guardian for Darryl Vaughn Hanna, Jr., who is in a persistent vegetative state after suffering four syncopal episodes while he was a pretrial detainee at the Manatee County Jail.[2] The crux of the amended complaint is that Defendants, including Defendant Nurse Carma Ogline, were medically negligent and deliberately indifferent to Hanna, Jr.'s medical needs.

---

[1] The Court construes the facts and evidence in light most favorable to Plaintiff for the purpose of ruling on the motion for summary judgment.
[2] Hanna, Jr. was awaiting trial on murder charges related to a double homicide.

During intake, Hanna, Jr. indicated that he did not have any mental, physical, or developmental disabilities or limitations that the jail needed to be aware of during his incarceration.  His appearance was noted as unremarkable, he had no visible signs of injuries, and he appeared alert and oriented.  Hanna, Jr. indicated that he was not currently ill or injured, had not experienced a head injury in the last 72 hours, and had not been to a hospital in the last three months.  He indicated that he had active asthma and used his inhaler in 2016.

On August 23, 2017, Deputy Thomas McGuire received a phone call informing him that Hanna, Jr. had passed out in the exercise yard.  McGuire went out and asked Hanna, Jr. what had happened.  Hanna, Jr. said that he was playing basketball, blacked out, and that his head hurt.  Hanna, Jr. appeared disoriented. Medical staff were called and Defendant Leila Polanco, a nurse, responded.  She was told by other jail residents that Hanna, Jr. had a seizure, it was too hot outside, and another resident may have hit Hanna, Jr. on the head.  Polanco concluded that the warm temperature outside caused Hanna, Jr. to faint and that he may have hit his head when he fell and sustained a concussion. On the assessment form, she selected the box associated with "Unintentional (e.g. sports, fall, etc.)" rather than the "Acute Medical Condition (e.g. loss of consciousness, seizure, etc.)" box.

On September 8, 2017, Hanna, Jr. fainted in his cell.  Nurses Ogline and Montayre responded to the call, although the timing and order of appearance appears to be somewhat in dispute.  Ogline evaluated Hanna, Jr., asking him questions about what had happened and how he was feeling.  Ogline completed an

urgent care assessment form – the assessment provided that Hanna, Jr. was awake, alert, and oriented, with no visible injuries. Hanna, Jr. complained of having left finger pain and told Ogline that he thought he had passed out. Hanna, Jr. had no complaints of shortness of breath, and his oxygen saturation was normal at 97%. A blood pressure check was also normal at 133, as were neurological checks. Again, although nurses responded to evaluate him, Hanna, Jr. was never seen or evaluated by a doctor, physician, or physician's assistant.

The next day, on September 9, 2017, a deputy found Hanna, Jr. lying face up on the floor underneath the toilet. The deputy entered the cell to check on him – although Hanna, Jr. was breathing, he was unresponsive to verbal or tactile stimulation. He made an emergency medical call, which Nurse Carma Ogline responded to. Ogline assessed Hanna, Jr.'s vital signs, applied oxygen, and activated emergency medical services ("EMS"). She continuously checked for an apical pulse and used AED pads. At 5:50 am, when Hanna, Jr. lost his pulse and respiration, Ogline initiated cardiopulmonary resuscitation (CPR). The chest compression continued until EMS arrived, and Ogline continued to assist EMS until Hanna, Jr. was resuscitated. Hanna, Jr. was then transported to a nearby hospital. Hanna, Jr. has not regained consciousness and remains in a persistent vegetative state.

## Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a).  A properly supported motion for summary judgment is not defeated by the existence of a factual dispute.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  Only the existence of a genuine issue of material fact will preclude summary judgment.  *Id.*

The moving party bears the initial burden of showing that there are no genuine issues of material fact.  *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004).  When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing the existence of genuine issues of material fact.  *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995).  If there is a conflict between the parties' allegations or evidence, the nonmoving party's evidence is presumed to be true and all reasonable inferences must be drawn in the nonmoving party's favor.  *Shotz v. City of Plantation*, 344 F.3d 1161, 1164 (11th Cir. 2003).

## Analysis

### *Count XV – Deliberate Indifference*

In this case, Plaintiff alleges a deliberate medical indifference claim against Ogline.  In her motion, Ogline argues that the undisputed facts show that her acts or omissions did not rise to the level of deliberate indifference, and that Plaintiff cannot establish causation.

#### September 8, 2017, Incident

It appears that there are issues of material fact as to whether Hanna, Jr. presented an objectively serious medical need on September 8, 2017, and whether

Ogline was indifferent to that medical need. Under the defense version of events, Ogline acted appropriately in her evaluation and treatment of Hanna, Jr. Ogline asserts that she promptly notified Nurse Practitioner Paula Sanders – the medical healthcare provider on call at that time – about the incident. Sanders ordered Ogline to monitor Hanna, Jr. every two hours, give him fluids and Gatorade, and ensure his vital signs were stable. Per Sanders' instructions, Hanna, Jr. was only permitted to return to his pod if he was stable, and he was appropriately monitored in the clinic.

However, Plaintiff disputes that Ogline contacted Sanders, pointing to record evidence – specifically, the urgent care assessment form that indicated the health care provider was not notified and that no orders were received. Plaintiff argues that the health care assessment supports a reasonable inference that Ogline did not in fact contact a healthcare provider. Although there is a reference to the progress note mentioning "P. Sanders," the note reflects that Sanders was allegedly contacted almost four hours after the emergency call, and that Sanders agreed with the plan of care in place. Plaintiff argues that this progress note supports a reasonable inference that Ogline made the decisions for Hanna, Jr.'s plan of care and only contacted Sanders, if at all, after Hanna, Jr. was discharged from medical and already back in his pod. Plaintiff additionally argues that even if Ogline did contact Sanders, and Sanders did develop the plan of care, Ogline should have pushed back and had Hanna, Jr. transferred to outside medical.

A reasonable jury could find that Hanna, Jr.'s medical condition was so

serious that he obviously required medical attention, and that Ogline was aware of the risk of harm given that Hanna, Jr. had blacked out. *See Hannah v. Armor Correctional Health Services, Inc.*, 792 F. App'x 742 (11th Cir. 2019) (holding that a reasonable jury could find that Hanna, Jr.'s medical condition was so serious that he obviously needed medical attention, and that deputy was subjectively aware of the risk of harm, given that Hanna, Jr. had blacked out). The jury could also find that Ogline disregarded this risk by more than mere negligence when Ogline failed to, among other things, refer Hanna, Jr. for further medical evaluation. *See id*. The motion for summary judgment is denied as to this ground.

September 9, 2017, Incident

Again, there appears to be issues of material fact concerning whether Hanna, Jr. presented an objectively serious medical need on September 9, 2017, and whether Ogline was indifferent to that medical need. The defense version of events would tend to show that Ogline acted appropriately in her evaluation and treatment of Hanna, Jr. According to Ogline, she quickly responded to an emergency call at 5:35 am after Hanna, Jr. was found unresponsive in his cell. She assessed his vital signs, applied oxygen, and activated EMS. She continuously checked for an apical pulse and used AED pads. At 5:50 am, when Hanna, Jr. lost his pulse and respiration, Ogline immediately initiated cardiopulmonary resuscitation (CPR) with the use of AED and Ambu bag. The chest compression continued until EMS arrived at 5:57 am, and Ogline continued to assist EMS until Hanna, Jr. was resuscitated. Hanna, Jr. was then transported to a nearby hospital. According to

Ogline's version of the events, she responded appropriately and within the standard of care.

Yet, Plaintiff disputes that Ogline acted appropriately, and again points to record evidence to argue that a reasonable jury could find in Plaintiff's favor. Plaintiff disputes that Ogline promptly activated EMS, for example, pointing to Deputy Braune's report that he made the emergency call at 5:28 am. Ogline did not respond until 5:35 am, which Plaintiff contends was delayed and in violation of Armor's own policies. Plaintiff also points to record evidence to show that EMS was not activated until 5:41 am, after Hanna, Jr. stopped breathing, and did not arrive until 5:48 am.

A reasonable jury could find that Hanna, Jr.'s medical condition on September 9, 2017, was so serious that he obviously required medical attention – this fact does not appear to be contested. A reasonable jury could also find that Ogline was subjectively aware of the risk of harm flowing from Hanna, Jr.'s condition and disregarded it by not promptly responding to the emergency call, by not immediately activating EMS pursuant to policy, by trying to take Hanna, Jr. back to the jail's infirmary, and by otherwise delaying the notification and arrival of EMS. The motion for summary judgment is denied as to this ground.

Causation

The Court finds that Ogline's argument concerning causation – that she did not cause the brain injury in this case – is conclusory and not supported by the evidence. Plaintiff argues that Ogline's inaction played a role in Hanna, Jr.'s

future episodes and current vegetative state and cites to record evidence to demonstrate causation. Clearly, there are factual issues for a jury to consider, including whether Ogline's actions contributed to or caused Hanna, Jr.'s injuries. The motion is denied as to this ground.

### *Count XIV – Medical Negligence*

Ogline argues that she cannot be sued for negligence or medical malpractice because she is entitled to immunity under § 768.28(9), *F.S.* Specifically, Ogline contends that she was working as a nurse for the benefit of Manatee County and may only be sued for wanton and willful actions.

When determining whether an independent contractor is entitled to qualified immunity as an "officer, employee, or agent of the state" under § 768.28(9)(a), courts must look to the degree of control retained or exercised by the state entity contracting with the private company. *Bean v. University of Miami*, 215 So. 3d 810, 816 (Fla. 3d DCA 2018). Although Ogline alleges that she was working as a nurse for the benefit of Manatee County, she has failed to point to record evidence to demonstrate the degree of control over her work retained or exercised by Manatee County, such as any contracts between Armor and Manatee County. *See Obremski v. Armor Correctional Health Services, Inc.*, No. 18-61798-CIV-ALTMAN/Hunt, 2020 WL 5224329, at *10-11 (S.D. Fla. Apr. 7, 2020) (denying summary judgment after finding that Armor had not established entitlement to sovereign immunity based on contract between Sheriff's Office and Armor). Plaintiff, on the other hand, has pointed to record evidence to argue that Armor had

control over Ogline's work, not Manatee County.

"Agency status is a question of fact, except in those cases where the party opposing summary judgment is unable to point to any conflicting facts or inferences to be drawn from the facts." *Id.* at *9 (quoting *M.S. v. Nova Southeastern University Inc.*, 881 So. 2d 614, 617 (Fla. 4th DCA 2004)). Based on the record before the Court, it is unclear what degree of control Manatee County or the Sheriff exercised over Armor or Ogline. Because Ogline has failed to point to record evidence to support her immunity claim, and Plaintiff has identified conflicting facts and inferences to be drawn as to Ogline's status, the motion is denied as to this ground.

### *Qualified Immunity or Good Faith Immunity*

Ogline also argues that she should be entitled to qualified immunity or "good faith" immunity. Courts have declined to extend the doctrine of qualified immunity to privately employed prison physicians. *See, e.g.*, *Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999). However, the Supreme Court has not foreclosed the possibility that an affirmative defense of "good faith" is something that could possibly be raised in certain circumstances. *See Richardson v McKnight*, 521 U.S. 399, 413-14 (1997). In this case, it does not appear that Ogline specifically raised this good faith defense until now. In her Answer, Ogline only mentions qualified immunity. (Doc. 62). Moreover, if a jury believes Plaintiff's version of events, Ogline did not act in good faith when she was subjectively aware of the risk of harm to Hanna, Jr. but disregarded that risk by more than mere

negligence.  The motion for summary judgment is denied as to this ground.

It is therefore

**ORDERED, ADJUDGED,** and **DECREED:**

(1) "Carma Ogline's Motion for Summary Judgment and Incorporated Memorandum of Law" (Doc. 279) is **DENIED**.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 16th day of October, 2020.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**