UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PATRICIA HANNAH,

      Plaintiff,

v.                                                                    Case No. 8:19-cv-596-T-60SPF

ARMOR CORRECTIONAL
HEALTH SERVICES, INC., et al.,

      Defendants.

                                            /

## ORDER DENYING "BERNARD MONTAYRE'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW"

This matter is before the Court on "Bernard Montayre's Motion for Summary Judgment and Incorporated Memorandum of Law," filed on July 6, 2020.  (Docs. 274; 282).  On August 19, 2020, Plaintiff Patricia Hannah filed her response in opposition.  (Doc. 365).  Upon review of the motion, response, court file, and record, the Court finds as follows:

### Background[1]

Plaintiff Patricia Hannah is the plenary guardian for Darryl Vaughn Hanna, Jr., who is in a persistent vegetative state after suffering four syncopal episodes while he was a pretrial detainee at the Manatee County Jail.[2]  The crux of the amended complaint is that Defendants, including Defendant Nurse Bernard Montayre, were medically negligent and deliberately indifferent to Hanna, Jr.'s

---

[1] The Court construes the facts and evidence in light most favorable to Plaintiff for the purpose of ruling on the motion for summary judgment.
[2] Hanna, Jr. was awaiting trial on murder charges related to a double homicide.

medical needs.

During intake, Hanna, Jr. indicated that he did not have any mental, physical, or developmental disabilities or limitations that the jail needed to be aware of during his incarceration.   His appearance was noted as unremarkable, he had no visible signs of injuries, and he appeared alert and oriented.   Hanna, Jr. indicated that he was not currently ill or injured, had not experienced a head injury in the last 72 hours, and had not been to a hospital in the last three months.   He indicated that he had active asthma and used his inhaler in 2016.

On August 23, 2017, Deputy Thomas McGuire received a phone call informing him that Hanna, Jr. had passed out in the exercise yard.   McGuire went out and asked Hanna, Jr. what had happened.   Hanna, Jr. said that he was playing basketball, blacked out, and that his head hurt.   Hanna, Jr. appeared disoriented. Medical staff were called and Defendant Leila Polanco, a nurse, responded.   She was told by other jail residents that Hanna, Jr. had a seizure, it was too hot outside, and another resident may have hit Hanna, Jr. on the head.   Polanco concluded that the warm temperature outside caused Hanna, Jr. to faint and that he may have hit his head when he fell and sustained a concussion. On the assessment form, she selected the box associated with "Unintentional (e.g. sports, fall, etc.)" rather than the "Acute Medical Condition (e.g. loss of consciousness, seizure, etc.)" box.

On September 8, 2017, Hanna, Jr. fainted in his cell.   Nurses Ogline and Montayre responded to the call, although the timing and order of appearance appears to be somewhat in dispute.   Ogline and Montayre evaluated Hanna, Jr.,

asking him questions about what had happened and how he was feeling.   Montayre attempted to take a blood pressure reading but was unable to do so.   Ogline completed an urgent care assessment form – the assessment provided that Hanna, Jr. was awake, alert, and oriented, with no visible injuries.   Hanna, Jr. complained of having left finger pain and told the nurses that he thought he had passed out. Hanna, Jr. had no complaints of shortness of breath, and his oxygen saturation was normal at 97%.   A blood pressure check was also normal at 133, as were neurological checks.   Again, although nurses responded to evaluate him, Hanna, Jr. was never seen or evaluated by a doctor, physician, or physician's assistant.

The next day, a deputy found Hanna, Jr. lying face up on the floor underneath the toilet.   The deputy entered the cell to check on him – although Hanna, Jr. was breathing, he was unresponsive to verbal or tactile stimulation. Ogline responded to the emergency call and ultimately called for emergency medical services ("EMS").   Hanna, Jr. was later transported to a nearby hospital.   Hanna, Jr. has not regained consciousness and remains in a persistent vegetative state.

### Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   A properly supported motion for summary judgment is not defeated by the existence of a factual dispute.   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).   Only the existence of a genuine issue of material fact will preclude summary judgment.   *Id.*

The moving party bears the initial burden of showing that there are no genuine issues of material fact.  *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004).   When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing the existence of genuine issues of material fact.  *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995).   If there is a conflict between the parties' allegations or evidence, the nonmoving party's evidence is presumed to be true and all reasonable inferences must be drawn in the nonmoving party's favor.  *Shotz v. City of Plantation*, 344 F.3d 1161, 1164 (11th Cir. 2003).

## Analysis

### *Count XV – Deliberate Indifference*

In this case, Plaintiff alleges a deliberate medical indifference claim against Montayre.   In his motion, Montayre argues that the undisputed facts show that his acts or omissions did not rise to the level of deliberate indifference, and that Plaintiff cannot establish causation.

It appears that there are issues of material fact as to whether Hanna, Jr. presented an objectively serious medical need on September 8, 2017, and whether Montayre was indifferent to that medical need.   A reasonable jury could find that Hanna, Jr.'s medical condition was so serious that he obviously required medical attention, and that Montayre was aware of the risk of harm given that Hanna, Jr. had blacked out.   *See Hannah v. Armor Correctional Health Services, Inc.*, 792 F. App'x 742 (11th Cir. 2019) (holding that a reasonable jury could find that Hanna,

Jr.'s medical condition was so serious that he obviously needed medical attention, and that deputy was subjectively aware of the risk of harm, given that Hanna, Jr. had blacked out). The jury could also find that Montayre disregarded this risk by more than mere negligence when Montayre failed to, among other things, refer Hanna, Jr. for further medical evaluation or call for emergency medical services. *See id.* The motion for summary judgment is denied as to this ground.

The Court finds that Montayre's argument concerning causation – that he did not cause the brain injury in this case – is conclusory and not supported by the evidence. Plaintiff argues that Montayre's inaction played a role in Hanna, Jr.'s future episodes and current vegetative state and cites to record evidence to demonstrate causation. Clearly, there are factual issues for a jury to consider, including whether Montayre's actions contributed to or caused Hanna, Jr.'s injuries. The motion is denied as to this ground.

### Count XIV – Medical Negligence

In the motion, Montayre argues that he cannot be sued for negligence or medical malpractice because he is entitled to immunity under § 768.28(9), *F.S.* Specifically, Montayre contends that he was working as a nurse for the benefit of Manatee County and may only be sued for wanton and willful actions.

When determining whether an independent contractor is entitled to qualified immunity as an "officer, employee, or agent of the state" under § 768.28(9)(a), courts must look to the degree of control retained or exercised by the state entity contracting with the private company. *Bean v. University of Miami*, 215 So. 3d

810, 816 (Fla. 3d DCA 2018).   Although Montayre alleges that he was working as a

nurse for the benefit of Manatee County, he has failed to point to record evidence to

demonstrate the degree of control over his work retained or exercised by Manatee

County, such as any contracts between Armor and Manatee County.   *See Obremski*

*v. Armor Correctional Health Services, Inc.*, No. 18-61798-CIV-ALTMAN/Hunt, 2020

WL 5224329, at \*10-11 (S.D. Fla. Apr. 7, 2020) (denying summary judgment after

finding that Armor had not established entitlement to sovereign immunity based on

contract between Sheriff's Office and Armor).   Plaintiff has pointed to record

evidence to argue that Armor had control over Montayre's work, not Manatee

County.

"Agency status is a question of fact, except in those cases where the party

opposing summary judgment is unable to point to any conflicting facts or inferences

to be drawn from the facts."   *Id.* at \*9 (quoting *M.S. v. Nova Southeastern*

*University Inc.*, 881 So. 2d 614, 617 (Fla. 4th DCA 2004)).   Based on the record

before the Court, it is unclear what degree of control Manatee County or the Sheriff

exercised over Armor or Montayre.   Because Montayre has failed to point to record

evidence to support her sovereign immunity claim, and Plaintiff has identified

conflicting facts and inferences to be drawn as to Montayre's status, the motion is

denied as to this ground.

### *Qualified Immunity or Good Faith Immunity*

Montayre also argues that he should be entitled to qualified immunity or

"good faith" immunity.   Courts have declined to extend the doctrine of qualified

immunity to privately employed prison physicians.   *See, e.g., Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999).   However, the Supreme Court has not foreclosed the possibility that an affirmative defense of "good faith" is something that could possibly be raised in certain circumstances.   *See Richardson v McKnight*, 521 U.S. 399, 413-14 (1997).   In this case, it does not appear that Montayre specifically raised this good faith defense until now.   In his Answer, Montayre only mentions qualified immunity.   (Doc. 62).   Moreover, if a jury believes Plaintiff's version of events, Montayre did not act in good faith when he was subjectively aware of the risk of harm to Hanna, Jr. but disregarded that risk by more than mere negligence.   The motion for summary judgment is denied as to this ground.

It is therefore

**ORDERED, ADJUDGED,** and **DECREED:**

(1)   "Bernard Montayre's Motion for Summary Judgment and Incorporated Memorandum of Law" (Doc. 274) is **DENIED**.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 16th day of October, 2020.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**