UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PATRICIA HANNAH, as plenary
legal guardian of Darryl Vaughn
Hanna, Jr., an individual,

      Plaintiff,

v.                                                                      Case No. 8:19-cv-596-TPB-SPF

ARMOR CORRECTIONAL HEALTH
SERVICES, INC., et al.,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

This cause comes before the Court on Plaintiff's Motion to Approve & Enforce Settlement of Personal Injury Claim with Armor Defendants[1] (Doc. 489) and Armor Defendants' Motion to Enforce Settlement Agreement, Request for an Evidentiary Hearing and Response to Plaintiff's Motion to Approve and Enforce Settlement (Doc. 490). Plaintiff filed a Response in Opposition to Armor Defendants' Motion to Enforce Settlement (Doc. 491). For the reasons discussed below, the undersigned recommends that Plaintiff's motion be granted, Armor Defendants' motion be denied, and the settlement agreement be approved by the Court.

    I.    BACKGROUND

Plaintiff Patricia Hannah is the plenary guardian for Darryl Vaughn Hanna, Jr. ("Hanna"), who was in a persistent vegetative state after suffering syncopal episodes while

---

[1] "Armor Defendants" include Defendants Armor Correctional Health Care Services, Inc., Leila Polanco, Carma Ogline, and Bernard Montayre.

detained as a pretrial detainee at the Manatee County Jail.  Defendant Armor Correctional Health Care Services, Inc. contracted with Manatee County and the Manatee County Sheriff's Office to provide medical and mental health care to those detained and/or incarcerated at the Manatee County Jail.  The crux of the personal injury claims against the Armor Defendants[2] is that they were medically negligent and deliberately indifferent to Hanna's medical needs.

This case was set for a jury trial to begin on March 29, 2021.  On March 18, 2021, Armor Defendants' counsel, after speaking with Plaintiff's counsel, sent the terms of a proposed confidential settlement agreement via email, which included tender of the full policy limits of Armor Defendants' primary carrier and two excess carriers (Doc. 490 at 1) to settle "[a]ny and all claims for bad faith or for other damages, including punitive damages, compensatory damages, attorney fees, costs, sanctions or amounts for attorney fees or for sanctions that have or will be awarded, any attorney fees agreed upon but not paid and for orders requiring payment of sanctions or fees and/or any other damages including but not limited [to] damages for malpractice, negligence, and/or Section 1983 or deliberate indifference claims…." (Doc. 489, Ex. 1).[3]  The email concluded with "[p]lease confirm the settlement and let's notify the court as soon as possible."  Plaintiff's counsel replied a few minutes later: "Confirmed. Case is settled."  Armor Defendants' counsel replied, thanking Plaintiff's counsel and asking that a notice of settlement be filed.  On the same day, Plaintiff filed a Notice of Conditional Settlement with the Armor Defendants notifying the Court that

---

[2] The four Armor Defendants are the only remaining Defendants in this action of the nine named in Plaintiff's Amended Complaint (Doc. 40).
[3] All the exhibits to the motions and the response were submitted directly to the Court for an *in camera* review and are not reflected on the docket.

"she has agreed in principle to settle all remaining claims in this action against the remaining Defendants, [the Armor Defendants]" (Doc. 486).   The Notice stated that the settlement was conditioned, at least in part, on the Court approving the settlement between these parties pursuant to Florida Statutes § 744.387(3) and that the parties would work diligently to present the Court with the appropriate motions and documents for its review to further the resolution of the action.   On the same day, the District Judge entered an Order dismissing the cause without prejudice as to the Armor Defendants subject to the right of the parties within 60 days of the date of the Order to submit a proposed settlement agreement for approval, submit a stipulated form of final order or judgment, request an extension of time, or for any party to move to reopen the action, upon good cause being shown (Doc. 487).

During the week of March 28, 2021, counsel for the parties discussed signing a release and who would prepare the release (Doc. 490, Ex. 3A).   On April 5, 2021, Plaintiff's counsel inquired as to when he would receive a release, and opposing counsel indicated that he was drafting the release (Doc. 490, Ex. 1 & Ex. 3A).   On April 7, 2021, Plaintiff again requested the release (Doc. 490, Ex. 2 & Ex. 3A).   On April 8, 2021, Armor Defendants provided a draft version of the release, and, on April 9, 2021, they provided the final version of the release (Doc. 490, Ex. 3A).   Concomitantly, on April 8 and 9, 2021, Plaintiff's counsel changed his position on executing a release and indicated that while release is a term of the settlement, the settlement was not conditioned on the execution of a release (Doc. 490, Ex. 6 & Ex. 7).

On April 9, 2021, there being a dispute between the parties as to whether execution of a release was a condition of settlement, Plaintiff filed her Motion to Approve & Enforce Settlement of Personal Injury Claim with Armor Defendants (Doc. 489).   Armor Defendants filed their competing motion on April 23, 2021 (Doc. 490).   Armor Defendants request that

the Court enforce the parties' settlement agreement by ordering Plaintiff to sign the "Settlement Agreement and Release" submitted *in camera* to the Court (Doc. 490, Ex. 8). On May 13, 2021, while the parties' instant motions were under consideration by the Court, Plaintiff's counsel telephonically informed the Court that Hanna had died the previous day.

II.   <u>ANALYSIS</u>

"[A] district court has jurisdiction to enforce settlement agreements when one party refuses to abide by the agreement prior to dismissal." *Le Bon Pain, Inc. v. Guyon & Co., Inc.*, 720 F. Supp. 983, 984 (S.D. Fla. 1989) (citing *Kent v. Baker*, 815 F.2d 1395, 1400 (11th Cir. 1987)); *see also Miles v. Northwestern Mut. Life Ins. Co.*, 677 F. Supp. 2d 1312, 1315 (M.D. Fla. 2009) (district court has inherent power to summarily enforce settlement agreements) (citing *Ford v. Citizens & S. Nat'l Bank*, 928 F.2d 1118, 1121 (11th Cir. 1991)); *Reed v. U.S.*, 717 F. Supp. 1511, 1514 (S.D. Fla. 1988) (district court retains inherent authority to "summarily enforce a settlement agreement entered into by litigants while litigation is pending before it"), *aff'd*, *Reed ex rel. Reed v. U.S.*, 891 F.2d 878, 881 (11th Cir. 1990). Settlement agreements are highly favored, and will be enforced whenever possible. *Robbie v. City of Miami*, 469 So.2d 1384, 1385 (Fla. 1985); *accord Murchison v. Grand Cypress Hotel Corp.*, 13 F.3d 1483, 1486 (11th Cir. 1994) ("We favor and encourage settlements in order to conserve judicial resources."). The party seeking to enforce the settlement agreement bears the burden of showing that the opposing party assented to its terms. *Miles*, 677 F. Supp. 2d at 1315 (citing *Carroll v. Carroll*, 532 So.2d 1109, 1109 (Fla. 4th DCA 1988)).

Principles of Florida's contract law govern the Court's construction and enforcement of this settlement agreement. *Broadnax v. Sand Lake Cancer Ctr., P.A.*, 819 F. App'x 799, 801 (11th Cir. 2020) (citation omitted). As such, there must be an offer, acceptance, and

4

consideration in addition to a "meeting of the minds as to the essential terms" of the settlement agreement. *Lunas v. Cooperativa De Seguros Multiples De Puerto Rico*, 100 So.3d 239, 241 (Fla. 2d DCA 2012) (citation omitted). A meeting of the minds is not whether there was an "agreement of two minds in one intention, but on the agreement of two sets of external signs—not on the parties having meant the same thing but on their having said the same." *Robbie*, 469 So.2d at 1385 (citation omitted). "To compel enforcement of a settlement agreement, its terms must be sufficiently specific and mutually agreed upon as to every essential element." *Spiegel v. H. Allen Homes, Inc.*, 834 So.2d 295, 297 (Fla. 4th DCA 2002) (citation omitted) ("Uncertainty as to nonessential elements … will not preclude enforcement of a settlement agreement."). "If a purported agreement leaves open its essential terms for future negotiation, or merely constitutes an agreement to agree, then there is no enforceable contract." *Miles*, 677 F. Supp. 2d at 1315 (citing *WrestleReunion, LLC v. Live Nation Television Holdings, Inc.*, No. 8:07-cv-2093-JDW-MAP, 2009 WL 2473686, at *4 (M.D. Fla. Aug. 11, 2009); *ABC Liquors, Inc. v. Centimark Corp.*, 967 So.2d 1053, 1056 (Fla. 5th DCA 2007)).

The execution of a settlement agreement is merely a procedural formality and is not a condition precedent to an enforceable settlement agreement. *See Boyko v. Ilardi*, 613 So.2d 103, 104 (Fla. 3d DCA 1993). To that end, "Florida law is clear that a settlement can be reached through a series of e-mail exchanges." *D.B.C. Corp. v. Nucita Venezolana, C.A.*, No. 18-25225-CIV-MORENO, 2020 WL 8872096, at *1 (S.D. Fla. June 15, 2020) (citing *Warrior Creek Dev., Inc. v. Cummings*, 56 So.3d 915, 917 (Fla. 2d DCA 2011)); *see also Miles*, 677 F. Supp. 2d 1312; *Omni Healthcare Inc. v. Health First, Inc.*, No. 6:13-cv-1509-Orl-37DCI, 2017 WL 3658837, at *4 (M.D. Fla. Aug. 24, 2017) ("e-mail communications do not need to be reduced to a formal, written settlement agreement to become binding").

5

As discussed below, the undersigned finds that the parties reached an agreement on the essential terms of a settlement. As such, their agreement should be enforced. Moreover, the undersigned is satisfied that the settlement was in the best interest of Hanna and should be approved by the Court.

### A. Enforceability of the Settlement Agreement

The Court concludes that the March 18, 2021 email constitutes a complete, binding, and enforceable settlement agreement. Here, it is evident that the parties assented to and "said the same thing" regarding all essential terms of the agreement.[4]  *See Robbie*, 469 So.2d at 1385 (emphasizing that the court must look not to whether the parties "meant the same thing" but to whether they "said the same thing"). Armor Defendants' March 18, 2021 email outlined the essential terms of the agreement (the offer), to which Plaintiff replied "Confirmed. Case is settled" (the acceptance). The acceptance did not propose any new or different terms, nor was it based or conditioned on any expressed contingencies. The terms of the agreement include the tendering of the full policy limits of Armor Defendants' primary

---

[4] While mutual assent on all essential terms is required in order to have an enforceable settlement agreement, "it is less clear what constitutes an essential term in any given transaction or proposed settlement." *In re Rolsafe Int'l, LLC*, 477 B.R. 884, 904 (M.D. Fla. 2012). Courts have held in similar circumstances that the mere reference to a release does not necessarily make the release an essential term. *Id.* at 909-10 (citing *Sands v. Wagner & Hunt, P.A.*, No. 09-60557-CIV, 2009 WL 2730469, at *4 n.7 (S.D. Fla. Aug. 28, 2009) (the "suggestion that settlement was contingent upon the drafting of a release is unavailing; the release would have merely memorialized the essential terms to which the parties had previously agreed"); *McDonnell v. Engine Distribs.*, No. 03-1999, 2007 WL 2814628, at *8 (D.N.J. Sept. 24, 2007) (holding that the scope of a release is not an essential term of a settlement but rather goes to the settlement's implementation); *Allapattah Servs., Inc. v. Exxon Corp.*, Nos. 05–21338–CIV–GOLD/SIMONTON, 91–0986–CIV–GOLD/SIMONTON, 2007 WL 7756735, at *3 (S.D. Fla. Sept. 26, 2007) (finding a release to be a non-essential term of the settlement agreement, as it "merely reflects the binding and conclusive effect of the agreement in the claims process")). Here, the release is a non-essential term of the settlement agreement, and even if it were deemed an essential term, the fact that a release was never executed does not preclude a finding of an enforceable settlement as discussed *infra*.

carrier and two excess carriers (Doc. 490 at 1) to Plaintiff to settle (*i.e.*, release) "[a]ny and all claims for bad faith or for other damages, including punitive damages, compensatory damages, attorney fees, costs, sanctions or amounts for attorney fees or for sanctions that have or will be awarded, any attorney fees agreed upon but not paid and for orders requiring payment of sanctions or fees and/or any other damages including but not limited [to] damages for malpractice, negligence, and/or Section 1983 or deliberate indifference claims…." The settlement was not contingent on the execution of a separate, specific version of a release. *See Olguin v. Florida's Ultimate Heavy Hauling*, No. 17-61756-COOKE/GOODMAN, 2018 WL 4409986, at *6 (S.D. Fla. Sept. 6, 2018) ("there is no evidence 'that the execution of a specific version of a release was a condition precedent to the settlement coming into existence'") (quoting *In re Rolsafe Int'l, LLC*, 477 B.R. 884, 909 (M.D. Fla. 2012)), *report & recommendation adopted*, 2018 WL 5098834 (S.D. Fla. Sept. 28, 2018); *see also Vital Pharms., Inc. v. S.A.N. Nutrition Corp.*, No. 06-60646-CIV, 2007 WL 1655421, at *7 (S.D. Fla. June 6, 2007); *Patrick v. Christian Radio*, 745 So.2d 578, 580 (Fla. 5th DCA 1999) (holding that settlement had been reached even though release had not yet been signed); *Calderon v. J.B. Nurseries, Inc.*, 933 So.2d 553, 554 (Fla. 1st DCA 2006) (holding that one party's refusal to sign a release does not allow that party to escape the binding effect of the settlement agreement); *Dania Jai-Alai Palace, Inc. v. Sykes*, 495 So.2d 859, 862 (Fla. 4th DCA 1986) (holding that enforceable settlement existed notwithstanding disagreement over form of release and absence of signed release). None of the parties' subsequent communications regarding the drafting or execution of a release voids the settlement agreement reached by the parties. *See In re Rolsafe Int'l*, 477 B.R. at 904 (finding that mere reference to a release, which was agreed upon but never provided, did not make the release an essential term or serve to

defeat or frustrate the settlement reached by the parties).  As a result, the parties' offer and acceptance by email on March 18, 2021 constitutes an enforceable settlement agreement containing all essential elements.  The execution of a specific written release was not a condition precedent.[5]

### B. Evidentiary Hearing Request

Armor Defendants requested an evidentiary hearing on the motions to enforce the settlement agreement (Doc. 490 at 9).  When material facts concerning the existence or terms of a settlement agreement are in dispute or where there is a material dispute concerning the authority of an attorney to enter into a settlement agreement on his client's behalf, the parties must be allowed an evidentiary hearing.  *Murchison*, 13 F.3d at 1486 (citations omitted).  However, a trial court may summarily enforce a settlement agreement without an evidentiary hearing when there is no substantial factual dispute as to the terms of the settlement.  *Id.* (citation omitted).

Armor Defendants argue that "[o]bviously, there is a factual dispute herein regarding whether or not the Release is part of the settlement" (Doc. 490 at 8). To the contrary, the terms of the settlement are set forth in the email exchange on March 18, 2021.  The issue posed by the parties is strictly a legal one; *i.e.*, whether those undisputed terms of the

---

[5] As a practical matter, the parties' dispute as to the wording of the release appears to be a distinction without a difference.  Armor Defendants would like Plaintiff to sign a release holding them harmless from any liens.  Plaintiff is willing to sign a release that includes hold harmless language, but she states she will "only agree to sign a 1-page release" (Doc. 491 at 5), which she attaches to her response (Doc. 491, Ex. 1), not Armor Defendants' 9-page "Settlement Agreement and Release" (Doc. 490, Ex. 8).   Moreover, both parties appear to agree there are no liens from which to be held harmless.  Plaintiff asserts that the fact that she went through a "painstaking process in two different courts to have everything approved and laid out to the penny" proves there is no potential issue regarding liens (Doc. 491 at 4).  Armor Defendants counters that there is no rational basis for Plaintiff to refuse to sign a release when "Plaintiff has represented that the amount of the liens is zero dollars" (Doc. 490 at 4).

settlement agreement require Plaintiff to execute a specific release—they do not.  As such, an evidentiary hearing was not warranted.

## C. Approval of the Settlement Agreement

Section 744.387 of the Florida Statutes requires a guardian to seek approval from the Court "[w]hen a settlement of any claim by or against the guardian, whether arising as a result of personal injury or otherwise, . . . is proposed…."  Fla. Stat. § 744.387(1); *see also id.* § 744.387(3)(a).  Pursuant to this provision, the Court may authorize the settlement "if satisfied that the settlement will be for the best interest of the ward." Fla. Stat. § 744.387(1).

The settlement and closing statement (Doc. 489, Ex. 3) and have been reviewed by the Court *in camera*.  Having reviewed the relevant documents, the Court is satisfied that the settlement was in the best interest of Hanna.

Finally, while Hanna's passing occurred after the instant motions were filed and the parties have not otherwise briefed any effect his death might have on this issue, the Court finds that Hanna's passing before the Court's approval of the settlement does not make the agreement any less binding.  *See Reed ex rel. Reed v. U.S.*, 891 F.2d at 881 n.3 (affirming district court's approval of a settlement pursuant to Fla. Stat. § 744.387(3)(a) after the death of a child).  The settlement agreement conclusively resolved the dispute between the parties, and a settlement is "as conclusive of the rights between the parties as a judgment." *Id*. at 880-81 (citations omitted).  In fact, "an agreement settling all issues in the case is binding not only upon the parties but also upon the court." *Id*. at 881 (quoting *Wallace v. Townsell*, 471 So.2d 662, 664 (Fla. 5th DCA 1985), *disapproved of on other grounds in Paulucci v. Gen. Dynamics Corp.*, 842 So.2d 797 (Fla. 2003)).  At the time of Hanna's death, all that remained for final judgment

to obtain was for the Court to approve the settlement and enter judgment. *See id*. at 881. As such, Hanna's death does not affect the Court's ability to approve the settlement.

III.    <u>CONCLUSION</u>

The undersigned finds the parties entered into an enforceable settlement agreement on March 18, 2021, and the settlement agreement was not conditioned on the execution of a separate written release. The undersigned further finds that the settlement was in the best interest of Hanna and should be approved.

Accordingly, it is hereby **RECOMMENDED**:

The Court enter an Order granting Plaintiff's Motion to Approve & Enforce Settlement of Personal Injury Claim with Armor Defendants (Doc. 489), denying Armor Defendants' Motion to Enforce Settlement Agreement, Request for an Evidentiary Hearing (Doc. 490), and directing:

1. The March 18, 2021 email is the operative settlement agreement in effect between the parties and constitutes a binding contract to which both parties shall adhere;

2. The parties shall comply with the terms of that settlement agreement within a reasonable period of time;

3. The settlement of Darryl V. Hanna, Jr.'s claims against the Armor Defendants is fair and reasonable and was in Darryl V. Hanna, Jr's best interest;

4. The proposed distribution of the settlement proceeds as outlined in the closing statement is proper, fair, and reasonable, and the proposed settlement funds should be disbursed accordingly; and

5. The settlement with the Armor Defendants is otherwise approved.

**IT IS SO REPORTED** in Tampa, Florida, on June 3, 2021.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

Within fourteen days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to the proposed findings and recommendations or request an extension of time to do so.  28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1.  Failure of any party to timely object in accordance with the provisions of § 636(b)(1) waives that party's right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions contained in this Report and Recommendation.  11th Cir. R. 3-1.


cc:     Hon. Thomas P. Barber